# FEBRUARY, 1916

---

### G. P. BULLARD ET AL. V. E. L. NORTON ET AL.

#### No. 2434.  Decided February 10, 1916.

**1.—Contractor's Bond—Action by Sub-contractor—Failure to Fix Lien.**

A bond executed to church trustees by one contracting to erect a church building and his sureties was conditioned that the contractor should discharge all indebtedness incurred in such work and complete the same free from mechanics' liens. It is also provided that it was "made for the use and benefit of

all persons who may become entitled to liens under the said contract, according to the provisions of law in such cases made and provided, and may be sued upon by them in proper person." A sub-contractor installing in the building a heating plant required by the contract, and entitled to fix a lien for the price, failed to give the trustees the notice necessary to fix same. He sued the contractor and his bondsmen for an unpaid balance of his claim. Held, that the clause giving such right of suit, in connection with that requiring the contractor to discharge all indebtedness incurred, evidenced an intention to secure all creditors who became entitled to fix liens; that plaintiff, as such creditor became entitled to look to the bond for payment; and that he did not lose his right to do so by failing to fix his lien by giving notice. (Pp. 577, 578.)

### 2.—Bond—Action by Beneficiary.

One not a party to a bond, but given by its terms a right of action thereon, has no greater right against the sureties than the payee of the bond himself; and any alteration of the contract which releases the rights of the payee against the sureties releases the right of such beneficiary against them. (P. 581.)

### 3.—Principal and Surety—Alteration of Contract—Release of Sureties.

A building contract, for due performance of which the contractor gave bond with sureties, provided for the retention by the owner of twenty per cent of the contract price in order to secure faithful performance of the work and release of all liens. By agreement of the principals this was disregarded and the full amount then earned under the contract paid over to the contractor. Held, that this was such alteration of the contract as discharged the sureties from liability to the owner of the building, and equally from liability to a sub-contractor, not a party to the bond, but entitled by its terms to sue upon it. (Pp. 578-581.)

Error to the Court of Civil Appeals, Second District, in an appeal from Taylor County.

Norton sued Bullard and others and obtained judgment which was affirmed on defendants' appeal, who then obtained writ of error.

*Sayles & Sayles, J. L. Gammon,* and *G. C. Groce,* for plaintiffs in error.—To the extent that the bond in issue in this case was for the benefit of Boze's creditors they, if seeking advantages under it, had to accept all of its conditions, and the failure of the church authorities to comply with the terms of the contract in respect to payments released these plaintiffs in error, as sureties, from further liability; and certainly so as to the church corporation, the judgment over in favor of which is, in any event, erroneous. Bryan v. Morton, 65 Texas, 258; Longeron v. San Antonio Tr. Co., 101 Texas, 63-77; Evans v. Graden, 125 Mo., 72, 28 S. W., 439; Simonson v. Thori, 36 Minn., 439, 31 N. W., 861; Village of Chester v. Leonard, 68 Conn., 495, 37 Alt., 399; Smith v. Montgomery, 3 Texas, 199; Amarillo Grain Co. v. Knight, 150 S. W., 318; Knight v. Lange Mfg. Co., 155 S. W., 977.

The Court of Civil Appeals erred in their holding that these plaintiffs could not rightfully complain of the application by Norton of $850 paid him by Boze out of the Abilene Baptist church job on a balance due him by Boze on a Cisco job and contract. U. S. v. American Bond. & Tr. Co., 89 Fed., 925-31; Murrell v. Scott, 51 Texas, 520, 526; State of Texas v. Middleton's Sureties, 57 Texas, 185, 188-90; Bennett v. Taylor, 43 Texas Civ. App., 30, 93 S. W., 704; Means v. Worthington (T. C. A.),

147 S. W., 345 (1), 346; Brown v. First Natl. Bank, 50 C. C. A., 602, 112 Fed., 901, 56 L. R. A., 870; Lee v. Storz Brewing Co., 75 Neb., 212, 106 N. W., 220; Grafton v. Reed, 34 W. Va., 172, 12 S. E., 767; Payment from Particular Fund, 30 Cyc., 1237 (f).

Whether Norton had constitutional rights or merely statutory ones, his rights, whatever they were, were dependent, as against the church corporation and these plaintiffs in error, upon giving notice to the church authorities of his claim, as required by statute, while the church authorities still held funds to which Boze, by compliance with his contract, would become entitled, and this he wholly failed to do. Rev. Stats., arts. 3294 to 3299; Berry v. McAdams, 93 Texas, 431; Nichols v. Dixon, 99 Texas, 263; Lonnegan v. San Antonio Tr. Co., 101 Texas, 63; Fullenweider v. Longmoor, 75 Texas, 480; Kuteman v. Lacey, 144 S. W., 1184; Shann v. King, 121 S. W., 207; Dudley v. Jones, 77 Texas, 69; Burt v. Parker County, 77 Texas, 338; Ricker v. Schadt, 5 Texas Civ. App., 460, 23 S. W., 907; Riter v. Houston Oil, etc., Co., 19 Texas Civ. App., 516, 48 S. W., 758; Herring, Hall, Marvin Co. v. Kroeger, 23 Texas Civ. App., 672, 57 S. W., 980; Basset v. Mills, 89 Texas, 162; Delauney v. Butler, 55 S. W., 752; Texas Builders' Supply Co. v. Beaumont Const. Co., 150 S. W., 770; Wilkerson & Satterfield v. McMurry, 167 S. W., 205; Texas Glass & Paint Co. v. S. W. Iron Co., 147 S. W., 620; Campbell-Root Lumber Co. v. Smith, 148 S. W., 1195; Garrett v. McAdams Lumber Co., 163 S. W., 320; N. O. Nelson Co. v. Stephenson, 168 S. W., 61; Genl. Bonding Co. v. Waples Lumber Co., 176 S. W., 651.

*Ben. L. Cox*, for defendant in error.—Plaintiff Norton having furnished the materials and labor contemplated in his contract in the construction of said church building, he was entitled to a mechanic's lien and a materialman's lien upon the building and the lots upon which it was constructed. Gwinn v. Wright, 42 Ind. App., 597, 86 N. E., 453; Beilharz v. Illingsworth, 132 S. W., 106; Bank v. Taylor, 91 Texas, 78, 40 S. W., 876; Strang v. Pray, 89 Texas, 525, 35 S. W., 1054.

Plaintiff's contract with defendant Boze being fully performed and complied with, and there being no rights of subsequent purchasers, mortgagees, and lienholders involved, and the defendant First Baptist Church of Abilene, Texas, not having contested plaintiff's lien in the trial court and not having appealed from the judgment thereof, appellants can not here question the validity of plaintiff's lien. Simkins on Contract and Sales, p. 296; Bank v. Taylor, 91 Texas, 78, 40 S. W., 876; Beilharz v. Illingsworth, 132 S. W., 106; Strang v. Pray, 89 Texas, 525, 35 S. W., 1054; Gwinn v. Wright, 42 Ind. App., 597, 86 N. E., 453; Warner E. M. Co. v. Maverick, 88 Texas, 489, 30 S. W., 437.

*Locke & Locke*, in brief filed on behalf of parties similarly interested. —If a building bond be conditioned absolutely for the payment of indebtedness to material men, they may sue directly on the bond, though it be

made to the owner of the property and contain no provision expressly permitting them to sue. Brown & Haygood Co. v. Ligon, 92 Fed., 851; King v. Murphy, 49 Neb., 670, 68 N. W., 1029; Green Bay Lumber Co. v. Independent Sch. Dist., 121 Iowa, 663, 90 N. W., 504; Ochs v. M. J. Carnahan Co., 42 Ind. App., 157, 76 N. E., 788; Baker v. Bryan, 64 Iowa, 561, 21 N. W., 83; Risse v. Hopkins Planing Mill Co., 55 Kan., 518, 40 Pac., 904; Bohn v. McCarthy, 29 Minn., 23, 11 N. W., 127; American Surety Co. v. Thorn-Halliwell Cement Co., 9 Kans. App., 8, 57 Pac., 237.

The failure, if any, of the church to retain twenty per cent of the contract price was not such a change in the contract as to release the sureties; especially, when practically all the money paid the contractor went to discharge indebtedness owing for labor done on, and material furnished for the building. Meyers v. Wood, 95 Texas, 67, 65 S. W., 174, 671; St. John's College v. Aetna Indemnity Co., 120 N. Y. Supp., 496; Empire State Surety Co. v. City of Des Moines, 131 N. W., 870; De Mattos v. Jordan, 15 Wash., 378, 46 Pac., 402; Chaffee v. U. S. Fidelity Co., 128 Fed., 918; Mayes v. Lane, 116 Ky., 566, 76 S. W., 399; King v. Murphy, 49 Neb., 670, 68 N. W., 1029; Hand Manufacturing Co. v. Marks, 36 Ore., 523, 59 Pac., 549; Leghorn v. Nydell, 39 Wash., 17, 80 Pac., 833.

MR. JUSTICE YANTIS delivered the opinion of the court.

E. S. Boze was the original contractor for the construction of the First Baptist Church at Abilene, Texas, with whose trustees the contract was made. E. L. Norton, defendant in error herein, was a sub-contractor under Boze, whose contract with the latter obligated him to furnish all labor and material in the installation of the heating and plumbing in such building according to the plans and specifications thereof, and for which Boze agreed to pay him the sum of $2500. Norton fully performed his contract, which was with Boze alone, and properly installed the heating and plumbing in said church building about December 1, 1910. Norton claimed that Boze, the contractor, failed and refused to pay him a balance of $900 under said contract. He filed this suit in the District Court of Taylor County to recover said $900. He joined as defendants the sureties on said contractor's bond, Geo. P. Bullard, W. A. Crow, R. C. Johnston, J. W. Harrison and J. L. Gammon, plaintiffs in error herein, against whom he also prayed for judgment. He alleged in said suit that he had a materialman's lien and mechanic's lien upon the church building and the land upon which it is situated, and prayed for foreclosure of his said lien.

The sub-contractor, Norton, alleged that the said sureties for Boze, the original contractor, executed with Boze and delivered to the defendant church their bond to secure the faithful performance of the contract which had been made between the church and Boze; that said bond contained a provision that it was made for the use and benefit of all persons who may become entitled to liens under said contract between

Boze and the church, according to the provisions of law in such cases made and provided, and may be sued upon by them as if executed to them in proper person.

Trial was had before the court without a jury, and a judgment was rendered in favor of Norton, defendant in error, who was plaintiff in the court below, against all of the other defendants for the sum of $900, with interest thereon from January 3, 1911, at the rate of six per cent per annum, together with all costs of suit. The judgment further provided that in addition to said amount the plaintiff, Norton, should recover from the defendants Boze and his bondsmen, Bullard, Crow, Johnston, Harrison and Gammon, the additional sum of $150 as attorney's fees. The contract provided for attorney's fees if incurred in enforcing the collection of indebtedness due by said Boze. The judgment of the court further provided that the First Baptist Church of Abilene, Texas, recover over and against the defendants Boze and his sureties, the plaintiffs in error, the sum of $900, together with interest thereon at six per cent per annum from January 3, 1911, and all costs of suit. The court further rendered judgment foreclosing in favor of plaintiff, Norton, the materialman's lien and mechanic's lien upon the premises of said church.

The plaintiffs in error, Geo. P. Bullard, W. A. Crow, R. C. Johnston, J. W. Harrison and J. L. Gammon, appealed from said judgment to the honorable Court of Civil Appeals for the Second District, where the judgment of the District Court was affirmed without written opinion. The defendants Boze and First Baptist Church of Abilene did not appeal from the judgment of the District Court. The plaintiffs in error presented their petition for writ of error, which was by this court granted on May 10, 1912.

The main questions for decision arise out of the provisions of the contractor's bond and the alleged breach of the contract itself between Boze, the contractor, and the First Baptist Church of Abilene, Texas.

The bond was given to secure the faithful performance of the contract between Boze and the church. The plaintiffs in error were sureties for Boze on said bond. It is as follows:

"Know all Men by These Presents: That I, E. S. Boze, and the following signers, of the city of Waxahachie, County of Ellis, State of Texas, are held and firmly bound unto trustees of First Baptist Church of Abilene, county and State, as well as to all persons who may become entitled to liens under the contract hereinbefore mentioned in the sum of ten thousand six hundred and eighty-seven and 50-100 dollars, lawful money of the United States of America, to be paid to the said trustees of the First Baptist Church of Abilene, and to said parties who may be entitled to liens, their executors, administrators or assigns, for which payment, well and truly to be made, we bind ourselves, one and each of our heirs, executors and administrators, jointly and severally firmly by these presents.

"Sealed with our seal: dated this 20th day of October, 1909.

"The condition of this obligation is such that if the above bounden
E. S. Boze, his executors, administrators or assigns, shall in all things
stand to and abide by, and- well and truly keep and perform the
covenants, conditions and agreements in above mentioned contract, en-
tered into by and between the said E. S. Boze, of Waxahachie, Texas,
and the said trustees of the First Baptist Church of Abilene, dated on
the 20th day of October, 1909, for the construction of the work or works
on the lot mentioned in the foregoing contract, and shall and duly and
promptly pay and discharge all indebtedness that may be incurred by
the said contractor in carrying out the said contract, and complete the
same free of all mechanic's liens and shall truly keep and perform the
covenants, conditions and agreements in said contract and in the within
instrument contained, on his part to be kept and performed, at the time
and in the manner,and form therein specified, as well as all costs, in-
cluding attorney's fees, in enforcing the payment and collection of any
and all indebtedness incurred by said E. S. Boze, in carrying out the said
contract, then the above obligation shall be void; else to remain in full
force and virtue.

"The bond is made for the use and benefit of all persons who may
become entitled to liens under the said contract, according to the pro-
visions of law in such cases made and provided, and may be sued upon
by them in proper person.

"In testimony whereof, witness the hands and seals of the said E. S.
Boze, and said bondsmen hereto affixed, the day and year above written."

It will be observed that Norton, the defendant in error, is not a
party to said bond. Neither was he a party to the original contract
between Boze and the church. The theory of Norton's suit was that he
was a beneficiary under said bond, with the right to sue thereon. He
was a sub-contractor under Boze, employed by Boze to install the heat-
ing and plumbing in the church building, and was to be paid by Boze
$2500. The latter having failed to pay him all of the $2500, he seeks
recovery from the sureties for Boze the balance due, relying upon that
provision in the bond which provides as follows:

"This bond is made for the use and benefit of all persons who may
become entitled to liens under the said contract according to the pro-
visions of law in such cases made and provided, and may be sued upon
by them as if executed to them in proper person."

The undisputed evidence shows, and there is no contention to the
contrary, that Norton did not serve the First Baptist Church with
written notice of his claim against Boze, as required by statute. In
default of such written notice he is not entitled to enforce a lien against
the First Baptist Church. Berry v. McAdams, 93 Texas, 435, 55 S. W.,
1112; Johnson v. Amarillo Improvement Co., 88 Texas, 511, 31 S. W.,
503, Horan v. Frank, 51 Texas, 404; Fullenwider v. Longmoor, 73
Texas, 480, 11 S. W., 500. But it is contended by him that the pro-
vision of said bond last quoted authorizes a recovery in his favor against
the plaintiffs in error as sureties on said bond, because he had become

entitled to fix a lien on said building whether or not he complied with the statute referred to, which requires written notice to be given. It was his contention that Article 16, section 37 of the Constitution created a lien in his favor independent of the provisions of the statute referred to. Said constitutional provision is as follows:

"Mechanics, artisans and materialmen of every class shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon or material furnished therefor, and the Legislature shall provide by law for the speedy and efficient enforcement of said liens."

The contention is that this constitutional provision created a lien against the church property to which the appellee became entitled, whether or not he gave the written notice to the church required by statute.

On the other hand it is contended by the plaintiffs in error that the constitutional lien did not attach and the appellee did not actually become entitled to the lien because he did not give written notice to the church in compliance with the statute; that it was necessary, in order to bring him within the beneficial provisions of said bond, to actually fix said lien, and that this could only be done by giving said written notice; that his failure to do so left him without a lien, and that, therefore, he did not become entitled to a lien, and hence could not recover.

The particular provision of said bond last quoted, disconnected from the other provisions of the bond, and disconnected from the provisions of the contract, whose faithful performance the bond was given to secure, is somewhat ambiguous in meaning. It is not entirely clear from that provision alone what the intention of the parties to the contract was. Standing alone it is probably subject to either construction contended for by the respective parties to the suit. But the entire bond should be considered in determining the intent of the parties, for by knowing the intent of the parties the apparent ambiguity disappears. It will be observed that preceding the last quoted paragraph of said bond, it is provided that the condition of the obligation is such that if Boze shall perform the covenants, conditions and agreements in the contract (meaning the contract between Boze and the Baptist Church) for the construction of the building, "and shall and duly and promptly pay and discharge all indebtedness that may be incurred by the said contractor in carrying out the said contract and complete the same free of all mechanic's liens" then the said obligation shall be void; else to remain in full force and virtue. We construe this to mean that the bond undertakes to secure the payment and discharge of all indebtedness incurred by the contractor in carrying out the contract whether in fact any lien should actually attach to the church property, and this provision when read in connection with the portion of said bond that is made for the use and benefit of all persons who may become entitled to liens under the said contract, clearly indicates that the bond was given

to secure all of the indebtedness incurred by the contractor in the construction of said building, even though he had not done the things necessary to give actual effect to fastening the lien. We think that under the bond the sureties became liable for all the debts incurred by the contractor in the construction of the building. This view harmonizes with the construction of the ambiguous section, herein placed upon it, that is, that it was not intended by said section that a lien should actually attach in order for it to be operative, but it was only intended that the person seeking to invoke its benefits should be such a person as had a right to fix a lien. This view is strengthened also by one of the provisions in the contract between Boze and the church. It is as follows:

"It is agreed by the parties that twenty per cent of the contract price shall be held by the owners as security for the faithful completion of the work, and may be applied under the direction of the superintendent in the liquidation of any damages under this contract; also furnishing the owners a release from any liens or rights of liens, by bond, herewith annexed, within ten days from date." (Meaning October 20, 1909, the date of the contract.)

The plain and unmistakable meaning of the latter portion of said contract quoted is, that a bond should be given by Boze which would dispense with the liens or rights of liens; that a bond should be given to the church of such a nature that all materialmen and sub-contractors might look to it as their security instead of depending upon liens. It is only referred to in ascertaining the intent of the parties, as to whether it was in contemplation that the lien should actually attach before liability would be created in favor of materialmen. This bond, which was to be made and annexed in ten days from execution of the contract, was intended to be a substitute for all liens and rights of liens which, for some reason not essential to know or understand, appeared not desired by the church to be fixed upon their property. This view harmonizes with the construction placed by us upon that portion of the bond which provides that the bond is made for all persons who may become entitled to liens under the said contract. We think it assists in interpreting the meaning of this otherwise ambiguous language. It makes it clearly and plainly mean that the bond was made for the benefit of all persons who had a right to fix a lien, whether or not they did the things necessary to fix and enforce the lien. Undoubtedly the intention of the parties to the contract, and the principal and sureties upon the bond, was for Norton to look to the bond instead of to liens. This is plain. We hold that Norton belonged to a class which was entitled to fix and enforce a lien, and that he became a beneficiary under said bond, with the legal right to depend upon it to secure the payment of his debt, if he elected so to do, in lieu of a lien which he was entitled to secure on the church property.

Notwithstanding Norton's legal right to look entirely to the bond for his security, a serious question is presented by one of plaintiffs in error's

assignments, which charges that the sureties on said bond were released therefrom by the conduct of the principals to the original builder's contract. It is charged that the original contractor, Boze, and the First Baptist Church, by agreement, changed the terms of the original contract in material respects without the knowledge and consent of the sureties. In such a case the sub-contractor would not be entitled to recover against the sureties, who would thereby be released from liability on the bond.

It was provided in the building contract between Boze and the church that Boze should receive $42,790 for the erection of the church; that he should be paid eighty per cent of the estimated value of the work as it progressed, at intervals of two weeks, subject to the certificates of the architects or authorized superintendent; that the remainder should be paid on satisfactory completion and acceptance of the entire work after the expiration of thirty days.

The contract further provided that twenty per cent of the contract price should be held by the owners of the church as security for the faithful completion of the work. It is claimed that the church and Boze altered the terms of said contract in that they agreed to, and did in fact disregard this provision in the contract.

The findings of fact by the District Court substantiate this contention. The sixteenth finding of fact by the trial court is as follows:

"That the church failed to retain twenty per cent of the contract price of the work done by Boze, as under the contract it should have done, for thirty days, and failed to retain ten per cent thereof as required by law."

The evidence abundantly supports this finding. In fact it appears to be undisputed. The evidence further shows that Boze applied to the trustees of the church for an advancement to him of the twenty per cent named in the contract. Boze testified, "I went to the building committee and told them I was getting behind with my accounts and owed the bank some, and some other parties were pressing for money, and I insisted that the building committee allow me a little more than the contract price." There is no testimony what the building committee said in reply, but the fact that they did comply with the request by advancing all of the twenty per cent, conclusively shows their assent to the proposition made by Boze. This amounted to an agreement between them to disregard the twenty per cent provision in the contract.

The trial court's twenty-first finding of fact is as follows:

"The sureties of Boze did not require him to furnish them any statement, and had no knowledge of the application of the checks as drawn on the Citizens National Bank in favor of Norton by Boze, and the payment of the balance due Norton on the Cisco academy job, nor did they have any knowledge or notice of the advance of the church to Boze of more than eighty per cent of the contract price of work being done. The sureties made no inquiries concerning these matters as the work progressed."

It is well settled that sureties are only bound by the precise terms of the contract whose performance they secure, and that any material alterations in the terms of the contract without their consent will release them from liability. This is true whether the change in the contract is injurious to them or favorable to them. There is no reason why this familiar rule should not have application to a builder's contract and bond under the same principles as apply to other characters of surety contracts. One of the most important provisions in the contract was that the owners of the church would retain twenty per cent of the total cost of the building thirty days after its completion. Reduced to figures the contract bound the owners to retain $8558 for thirty days after the completion of the contract. The owners and Boze, the contractor, agreed that said provision in the contract would be disregarded, and so it was disregarded, and nothing was held by the owners, but the entire contract was paid for by the church at its completion. At least a portion of this money that should have been retained by the church was paid by Boze for work which he owed Norton on a Cisco contract, which was in no way connected with the church contract. This might with propriety be contended to be one of the direct results of the waiver by the church and Boze of the twenty per cent provision in the contract, for the evidence directly shows that at least a portion of the advance payment was used by Boze to pay Norton on the Cisco work. This shows direct injury to the sureties. However that may be, the sureties had a direct interest in that provision of the contract which provided that $8558 should be held by the owners until after the completion of the building. It had a direct bearing upon their risk as sureties. So far as the record shows, this provision in the contract was the only security which they had. It was stricken out without their knowledge or consent, and whether this change in the contract resulted in injury to them or not, it resulted in materially changing the terms of the contract upon which they were bound as sureties. That which remained after the change constituted a new contract. Upon this new contract they were not obligated, and can not be bound. The old contract was annulled by the change. To the new contract they have not assented, and by it they were not bound. Ryan v. Morton, 65 Texas, 258; Smith v. Montgomery, 3 Texas, 203; McKnight v. Lange Mfg. Co., 155 S. W., 977; United States v. Freel, 92 Fed., 301; Evans v. Graden, 125 Mo., 72, 28 S. W., 439; Village of Chester v. Leonard, 68 Conn., 495, 37 Atlantic, 399.

It is unimportant in a decision of this question that the sureties of Boze did not require him to furnish them any statement, and that they made no inquiries concerning the advancement by the church to Boze of more than eighty per cent of the contract price of the work being done, as noted in the trial court's conclusions of fact. No duty rested upon them by law, or by the terms of the contract to make such inquiries. They were not required in law to anticipate that Boze, whose sureties they were, and the church trustees would change the contract.

They had a right to rely upon it that the contract would be carried out in good faith, with no necessity for them to keep watch over the conduct of the parties. When the contract was altered the plaintiffs in error were released as sureties on the bond. The defendant in error, Norton, was not a party to the original contract between Boze and the church, and in no way a party to the bond, except that he became a beneficiary under the bond, and the sureties became liable to him, only in the event they were liable to the church. For Norton to recover on the bond he must affirm and establish its legality and binding force upon the sureties. He can not hold the plaintiffs in error on the provisions of the bond that are favorable to him and deny to the plaintiffs in error the right to be bound only by the terms of the contract and bond. He can not, for the purpose of recovering against the plaintiffs in error, affirm the provisions of the bond and contract without affirming it in its entirety. He is bound by the provisions of the bond and contract identically as the church was bound. The contract ceasing to be, on account of alterations, binding upon the sureties favorably to the church, it could not be binding on the sureties favorably to Norton. When the sureties were released, they were released from the contract in its entirety, including the provisions under which Norton had the right to sue as a beneficiary. The contract ceased to be binding under the undisputed evidence, either favorably to the church or to Norton. The sureties were entirely absolved from the contract, and Norton's recovery against them can not be upheld. This holding renders it unnecessary to pass upon the other questions presented.

In accordance with these views, we hold that the judgment of the Court of Civil Appeals and the judgment of the District Court should be reversed and the cause here rendered in favor of the plaintiffs in error, Geo. P. Bullard, W. A. Crow, R. C. Johnston, J. W. Harrison and J. L. Gammon, against the defendant in error, E. L. Norton, and against the First Baptist Church of Abilene, Texas, as to the judgment which was rendered over against the plaintiffs in error in its favor.

The First Baptist Church of Abilene, Texas, not having appealed from the judgment of the District Court, and not having asked here for affirmative relief from the lien which was declared against it in the District Court in favor of E. L. Norton, it can not be granted relief from the lien established by the judgment of the District Court in favor of Norton, but the judgment of said court must be in all things affirmed in favor of E. L. Norton against E. S. Boze and said church. Likewise it must be affirmed as to the judgment in favor of the church over against Boze. The plaintiffs in error should recover from Norton and the First Baptist Church of Abilene, Texas, all costs incurred by them in this court and in the Court of Civil Appeals and the District Court. The defendant in error, Norton, should recover from the defendants Boze and the First Baptist Church of Abilene, Texas, all costs incurred by him in the District Court. It is accordingly so ordered.

*Reversed and rendered.*