ATKINSON et al. v. JACKSON BROS. et al.*
(No. 6669.)

(Court of Civil Appeals of Texas. Dec. 3, 1923. Rehearing Granted in Part and in Part Refused Jan. 9, 1924. Further Rehearing Denied Feb. 13, 1924.)

1. **Mechanics' liens** ☞263(3) — **Owners of building held necessary parties to action for material furnished contractor under agreement to pay materialman direct.**

Where a lumber company brought an action on agreement that the owners of a building would pay to plaintiff such amounts as became due on the contract as the work progressed for the materials furnished to the contractor, the owners of the building were necessary parties to the action.

2. **Frauds, statute of** ☞18(2)—**Promise to pay materialman money due contractor under building contract for material furnished contractor held not within statute.**

A promise or contract by which one party agrees to pay over to another party a sum or sums of money for a third party, the first party being indebted to, or, in the course of a building contract then existing between the first party and the third party, the first party would become indebted to the third party, and the third party would become indebted to the second party who agreed to furnish material to the third party necessary to a performance of the building contract, is based upon a valid consideration, need not be in writing, and is not within the statute.

3. **Mechanics' liens** ☞277(4) — **Owners may not demand hearing on issue of existence of lien on plea of misjoinder denying lien.**

In an action for materialman's lien, where the question whether a lien existed was one of fact, to be determined with other issues on trial of the case on its merits, the owners of the property are necessary parties and have no right to demand a hearing on the issue of the existence of a lien on a plea in abatement for misjoinder of parties merely because they deny the existence of the lien.

4. **Action** ☞48(3)—**Petition on agreement of owners to pay direct to materialman money due contractor and to foreclose mechanics' lien held not misjoinder of actions.**

A petition by a lumber company joining a contractor for the construction of a building and the owner on an agreement that the owner of the building would pay, direct to the lumber company for materials furnished, money due the contractor as the work progressed, and for a foreclosure of a mechanics' lien, *held* not to constitute a misjoinder of actions.

5. **Action** ☞48(1) — **Multiplicity of suits avoided.**

It is the policy of the law to avoid a multiplicity of suits and to settle all matters between the parties relative to the same subject-matter in the same suit.

6. **Damages** ☞123—**Measure of damages for defective construction stated.**

Where defects in construction of a house are remediable, the owner's measure of damages is such an amount as reasonably covers the cost of remedying defects so as to fulfill the contract terms; and, if the defects are irremediable, the measure of damages is the difference between the value of the house as constructed and its value had it been constructed according to plans and specifications.

7. **Contracts** ☞295(1)—**Contractor held entitled to recover contract price upon substantial performance.**

Where contractors substantially complied with their house-building contract, *held*, that they were entitled to recover the contract price plus the agreed price of extras less the amount paid by the owner.

8. **Damages** ☞67, 208(9)—**Judgment** ☞305 —**Interest not recoverable eo nomine; interest held for jury; in absence of finding supporting a recovery of interest as damages it should be excluded.**

Interest is not recoverable eo nomine, but as damages is a question for the jury, and, in the absence of a finding awarding such interest as a part of the damages, a judgment including the interest should be reformed so as to exclude it.

9. **Appeal and error** ☞930(3)—**Presumption that court finds for defendant on issue not requested to be submitted by plaintiff appellant.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1985, providing on appeal an issue not submitted and not requested shall be deemed as found by the court in such manner as to support the judgment, where a lumber company brought an action on an agreement that the owner of a building being constructed would pay money due the contractor to the plaintiff direct, and where no request was made by plaintiff to submit the issue as to whether there was such an agreement, it will be presumed that the trial court found in favor of the owner of the building on such issue.

10. **Husband and wife** ☞150—**Married woman not liable for improvements on separate estate not expressly authorized.**

The mere fact that a married woman knew a contract was made by her husband to improve her separate property, which she insisted on being carried out as made, and that it inured to the benefit of her property and enhanced the value thereof, is not sufficient to bind her and her separate property to pay for such improvement, in absence of proof that she au-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 26, 1924.

thorized the contract, intending to bind herself, or that by her acts and conduct in inducing the contract she would be estopped to deny her liability.

**11. Constitutional law ⊚⇒34—Mechanics' liens ⊚⇒118, 128—Compliance with statute mandatory as to materialman.**

Const. art. 16, § 37, as applied to a materialman who furnishes the original contractor with material out of which a building is constructed, is not self-executing, and, unless Rev. St. arts. 5623, 5633, and 5637, relating to notice and filing of claims, have been complied with, the materialman is not entitled to a mechanics' lien.

**12. Constitutional law ⊚⇒34 — Constitutional provision self-executing as applied to original contractors.**

Const. art. 16, § 37, relating to mechanics' materialman's and labor liens is self-executing, so far as applied to original contractors.

**13. Homestead ⊚⇒57(3)—Evidence held sufficient to establish premises against which lien claimed as homestead.**

In an action by a materialman against the owner and contractor on a contract providing that the owner would pay the contractor, where the contractor filed cross-petition against the owner asking to subject the premises to a mechanic's lien, evidence *held* sufficient to support a finding that the premises were the homestead of the owners.

**14. Homestead ⊚⇒38—Preparation looking to actual occupancy for homestead impresses property with such character.**

Where a lot is not actually occupied as a homestead but is held by the parties claiming the homestead right for that purpose, which purpose is evidenced by acts of preparation looking to its actual occupancy for a homestead, such intention, when so evidenced, impresses the property with a homestead character.

On Motion for Rehearing.

**15. Assignments ⊚⇒50(1) — Equitable assignment of specific fund in hands of third person creates equitable property if existing potentially.**

An equitable assignment of a specific fund in the hands of a third person creates an equitable property in such fund if it exists potentially.

**16. Interest ⊚⇒15, 68—Recoverable on balance due; where mathematical calculation will ascertain amount of interest due, court may allow it.**

Under Rev. St. art. 4977, interest is recoverable on the balance due, found due on a written contract, and the court is authorized to allow interest on the amount of the balance due on a contract without submitting the question of amount thereof to the jury, as a mere mathematical calculation is required.

**17. Damages ⊚⇒68—Interest on unascertained sum for extras held not recoverable eo nomine.**

Where building contract provided that the contractor would be paid for extras a fair and reasonable price, without regard to the price fixed by the contract for work or material of a similar nature, the price to be determined by the parties, interest on the amount found by the jury to be due the contractors for extra labor and material agreed upon, *held* not recoverable eo nomine but as damages for wrongfully withholding payment of such sum; such sum not being ascertainable from the contract, but dependent upon extraneous proof and a finding of the jury as to the amount and reasonableness and fairness of the prices charged.

**18. Judgment ⊚⇒256(6)—Rule as to interest on unascertained damages held applicable to special issue verdicts.**

The rule that, where the question is the amount of the recovery of a sum payable, which has been wrongfully withheld, except in the instances provided by statute, such as on open account, or on a written contract "ascertaining the sum payable," interest cannot be allowed thereon from the date of the accrual of the cause of action to the date of the judgment, in absence of a jury finding awarding interest as part of the damages, is applicable to special issue verdicts, and the verdict on special issues as to the amount recoverable constitutes the sole basis of the judgment, and the trial court is not authorized to add thereto damages not included in such verdict.

**19. Homestead ⊚⇒38—Acts of preparation held sufficient.**

The survey of a lot to ascertain the necessary fills and grades to be made in order to erect thereon a type of building selected, the preparations of plans and specifications in accordance with the survey, and the seeking of competitive bids on said plans and specifications, *held* sufficient acts of preparation to occupy the lot in the future to impress it with the character of homestead.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Action by the Leeper-Curd Lumber Company, a partnership, against Jackson Bros. and J. B. Atkinson and wife. From the judgment rendered, plaintiffs and defendants appeal. Reformed and affirmed.

Critz & Woodward, of Coleman, for appellants Atkinson and wife.

Snodgrass, Dibrell & Snodgrass, of Coleman, for appellant Leeper-Curd Lumber Co.

Jenkins & Miller, of Brownwood, for appellees Jackson Bros.

Statement.

BLAIR, J. Leeper-Curd Lumber Company, a partnership, sued Jackson Bros., a partnership, and J. B. Atkinson and his wife, Mary E. Atkinson, to recover on an account, alleging that Jackson Bros. as building contractors had by a written contract agreed to furnish all labor and material necessary to construct, in accordance with certain plans and specifications and addenda thereto, a residence for the said J. B. Atkinson and wife, on a lot in Coleman, for a total consid-

eration of $7,582.50; that plaintiff furnished Jackson Bros. the lumber and material with which the residence was constructed; that it was agreed between Jackson Bros., J. B. Atkinson, and plaintiff that Atkinson, the owner, would pay direct to plaintiff on the account such amounts as would become due Jackson Bros. as the work on the residence progressed; that pursuant to such agreement Atkinson did pay plaintiff at various times amounts aggregating $1,600; that there was a balance of 1,045.75 still due on said account, with interest from January 1, 1922; that Jackson Bros. had completed the building, and, although J. B. Atkinson and his wife had accepted it and still owed Jackson Bros. more than the amount of plaintiff's debt on the contract, yet all the defendants refused to pay said account or any part of it. Plaintiff further alleged a compliance with the statute authorizing the establishing of a materialman's lien on the premises and residence constructed under the contract, and sought a foreclosure thereof. Plaintiff further alleged, by trial amendment, that Mary E. Atkinson did not sign the contract with Jackson Bros. to construct the building, but that her husband, J. B. Atkinson, in executing such contract, acted as her agent, with her knowledge and consent, and that she had ratified the contract, which was alleged to have been made for the benefit of her separate property, materially enhancing the value thereof.

Jackson Bros. filed an answer to plaintiff's petition, and to defendants Atkinson and wife's answer, consisting of a general demurrer, a special exception, and a general denial; and, in addition, filed a cross-bill against Atkinson and wife, alleging a balance due them on the contract, and for extras agreed upon; and further prayed for $1,500 damages, alleged to be due them because of the interference by Atkinson and wife in the prosecution of the contract. Jackson Bros. alleged a materialman's mechanic's and laborer's lien to exist in their favor against the premises and residence by reason of the Constitution and the statutes in such cases made and provided, and sought a foreclosure of such lien upon the premises described in the contract and the residence constructed thereon by them. They also alleged the same facts as plaintiff, seeking thereby to fix liability upon Mary E. Atkinson for their debt.

Defendants Atkinson and wife filed an answer to plaintiff's petition, consisting of sworn pleas in abatement of misjoinder of parties and causes of action, a general demurrer, special exceptions, a general denial, plea of the statutes of fraud, a sworn denial of the claim, a plea of homestead, a plea of want of consideration for the alleged promise to pay the account of Jackson Bros., and a denial of any indebtedness to Jackson Bros. They also filed an answer to the cross-bill of Jackson Bros., consisting of the same

pleas in abatement and exceptions as urged to plaintiff's petition, and, in addition, denied under oath the existence of any lien in favor of Jackson Bros., denied any liability for extras, pleaded payment of various items in addition to those pleaded by Jackson Bros., and by way of cross-bill against Jackson Bros. prayed for damages for various defects in workmanship and material in the construction of the building, and for damages for failure to construct the building in accordance with the plans and specifications and addenda thereto.

Certain others who sought to establish laborers' liens upon the property intervened in the suit; but, since no one in this case is complaining of any judgment rendered as to them, wo do not deem it necessary to set forth their pleading.

The court overruled all pleas in abatement and general and special demurrers before announcement on the merits, and the party or parties presenting same duly excepted. The case was tried to a jury, and, upon their answers to special issues submitted, the court rendered judgment in favor of plaintiff, Leeper-Curd Lumber Company, against Jackson Bros., jointly and severally, for $1,110.20, with interest and costs of suit, but denied a recovery to plaintiff against J. B. Atkinson or his wife, Mary E. Atkinson. The court also rendered judgment in favor of the defendants Jackson Bros. against the defendant J. B. Atkinson for $1,466.90 (being the balance which the jury found to be due Jackson Bros. on the contract, with interest thereon from the date of the acceptance of the building by Atkinson and wife), with interest on the judgment from the date thereof, but denied them a judgment against Mary E. Atkinson. A lien was denied all parties pleading such on the premises or residence constructed thereon under the contract. All issues of damages pleaded by way of cross-actions by the various parties to the suit were decided adversely to the party pleading same by the jury and court, and judgment was so entered.

Plaintiff filed a motion for new trial and to reform the judgment, which was overruled, an exception taken to the action of the court thereon, notice of appeal given, and plaintiff has duly perfected an appeal to this court.

Jackson Bros. filed a motion for a new trial and to reform the judgment, which was overruled by the court, an exception taken, notice of appeal given, and they have duly perfected an appeal.

J. B. Atkinson filed a motion for new trial, which was overruled, to which action of the court he excepted, gave notice of appeal, and has duly perfected an appeal to this court.

### Findings of Fact.

The uncontroverted facts show that Jackson Bros., contractors, by a written contract

with J. B. Atkinson, agreed to furnish necessary labor and material to construct a residence on a lot in Coleman, owned by Mary E. Atkinson, wife of J. B. Atkinson, for a consideration of $7,582.50. Certain extras were agreed upon between the parties, for which the jury found Jackson Bros. entitled to recover $573. Plaintiff, Leeper-Curd Company, furnished the contractor the items of lumber and material sued for herein with which to construct the residence. It was agreed between Jackson Bros. and plaintiff that Atkinson would pay direct to plaintiff such amounts as became due on the contract as the work progressed, and Atkinson did pay $1,600 on said account, leaving a balance of $1,045.75 due, as shown by plaintiff's petition. Atkinson owed Jackson Bros., at the time of the suit, a balance of $1,394.84 on the contract. Plaintiff did not comply with the prerequisites of articles 5623, 5635, and 5637, relative to establishing a materialman's lien on the premises or residence constructed by Jackson Bros. under the contract with Atkinson, and no lien existed in its favor. The premises and the building constructed thereon was the homestead of J. B. Atkinson and his wife, Mary E. Atkinson, at the time of the execution of the contract with Jackson Bros., and no lien existed in their favor on the premises; no effort having been made to comply with the law relative to fixing a lien on the homestead for improvements thereon.

## Opinion.

All parties having perfected an appeal, their assignments of error so overlap that we will discuss the questions raised without direct reference thereto.

The first question presented is: Was there a misjoinder of parties to the suit? Appellant J. B. Atkinson's pleas in abatement because of the alleged misjoinder of parties were overruled before announcing on the merits, and again after the verdict of the jury had been returned. In this we think the court was correct. Plaintiff sought to hold appellant J. B. Atkinson upon two grounds—first, it was alleged that J. B. Atkinson contracted to pay direct to plaintiff such amounts as would be due Jackson Bros. under the contract as it progressed, and further alleged that Jackson Bros. had completed the contract and that J. B. Atkinson still owed on the contract more than enough to pay Jackson Bros.' account to plaintiff; second, plaintiff sought to establish a lien upon the premises and the building constructed thereon by reason of having furnished the lumber and material to the original contractor, alleging a compliance with the statutes relative to fixing a materialman's lien. Under plaintiff's pleadings, if it established them by proof, appellants, J. B. Atkinson and his wife, were necessary parties to the suit.

[1, 2] On the first ground alleged, it became a matter of proof whether or not J. B. Atkinson made the contract to pay plaintiff such amounts as would become due Jackson Bros. as the work on the building progressed; and by reason of such plea J. B. Atkinson could be held to a final determination of the issue, unless such contract is, as alleged by appellants, in violation of the statutes of fraud. We do not think it violative of the statutes of fraud, as it did not require Atkinson to answer for the debt, default, or miscarriage of Jackson Bros., but only to pay over to plaintiff such amounts as became due under the contract to Jackson Bros., and if none ever became due, or none was due at the time of the suit, then no liability existed on the part of J. B. Atkinson. A promise or contract by which one party agrees to pay over to another party a sum or sums of money for a third party, the first party being indebted to or in the course of a building contract then existing between the first party and the third party, the first party would become indebted to the third party, and the third party would become indebted to the second party, who agreed to furnish materials to the said third party necessary to a performance of said building contract, is based upon a valid consideration, and does not come within the statutes of fraud, and need not be in writing. Blankenship & Blake Co. v. Tillman, 4 Willson, Civ. Cas. Ct. App. § 296, 18 S. W. 646, and cases cited; Woods v. Davis, 1 White & W. Civ. Cas. Ct. App. § 952.

[3] Appellant Atkinson and his wife were necessary parties to the plaintiff's suit under its allegation that plaintiff had and was entitled to a materialman's lien against their premises and the residence constructed under the contract; which lien plaintiff sought to establish and foreclose by this suit. Under plaintiff's pleadings the question of whether or not a lien existed became a question of fact, to be determined along with other issues on the trial of the case upon its merits, and appellant Atkinson had no right to demand a hearing upon this issue of the existence of a lien on his plea in abatement for misjoinder of parties, merely because he denied in such plea under oath the existence of such lien.

[4] Neither do we sustain appellant Atkinson's plea in abatement of misjoinder of causes of action. By these pleas he principally attacked the right of Jackson Bros. to sue himself and his wife in cross-action for the balance due on the contract and for damages for the alleged breach, in plaintiff's suit on account, and to establish and foreclose a lien. Plaintiff's right to recover against Atkinson under his first count depended upon whether or not Atkinson made an agreement to pay over such amounts as became due Jackson Bros. on the contract, and further whether it was a fact that there was anything still owing the said Jackson Bros. on the contract at the time of the suit; therefore, that portion of Jackson Bros.' suit

which sought a recovery of the balance due on the contract was properly a matter to be determined under plaintiff's as well as under Jackson Bros.' pleadings. Likewise, do we think that Jackson Bros.' claim for damages growing out of the breach of contract for interference by Atkinson in the execution of the same, would become a fund owing and due Jackson Bros. under the contract, which plaintiff would be entitled to recover in the hands of Atkinson under his allegation that Atkinson had agreed to pay whatever amount became due Jackson Bros. as the work progressed. Therefore there is no misjoinder of causes of action in the instant suit, for plaintiff under its pleadings, if established by proof, could have ultimately enforced against Atkinson whatever claim or judgment Jackson Bros. established or recovered against Atkinson. If plaintiff had been successful on the trial in establishing its allegation that Atkinson agreed to pay direct to it such amounts as became due Jackson Bros. on the contract as it progressed, it would have been entitled to recover of Atkinson whatever balance was due Jackson Bros. on the contract, or for damages for a breach of the contract to the extent of full payment of its account, if the debt owing by Atkinson to Jackson was enough to pay the same in full, if not, then to the full amount of Atkinson's debt to Jackson Bros. Or, if plaintiff had been successful in establishing its materialman's lien on the premises and residence constructed under the contract, it would have thereby impounded in Atkinson's hands whatever funds were due Jackson Bros. under the contract, for which plaintiff could have had a personal judgment against Atkinson, as well as for a foreclosure of such lien in satisfaction of its debts against the property of Atkinson and wife. First Nat. Bank v. Lyon-Gray Lumber Co., 110 Tex. 172, 217 S. W. 133.

[5] "It is the policy of our laws to avoid a multiplicity of suits and to settle all matters between the parties relative to the same subject-matter in the same suit." In support of our holding on this point and of the general proposition of law that courts are required to avoid a multiplicity of suits, we cite the following: M., K. & T. Ry. Co. v. Starr, 22 Tex. Civ. App. 353, 55 S. W. 394; Stewart v. Gordon, 65 Tex. 347; Revised Civil Statutes, art. 1330; Pate v. Whitley (Tex. Civ. App.) 196 S. W. 581; Kemendo v. Fruit Co., 61 Tex. Civ. App. 631, 131 S. W. 73; Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423; Adams v. First Nat. Bank (Tex. Civ. App.) 178 S. W. 993; Slade v. Lumber Co. (Tex. Civ. App.) 93 S. W. 475.

[6] Appellant also complains that the trial court, in rendering judgment against him in favor of Jackson Bros. failed to give him credit for two items found in his favor by the jury's verdict. We do not sustain this contention. The jury were asked if Jackson Bros. had substantially complied with their contract and built the house in accordance with the plans and specifications, and addenda and extras agreed upon, and they answered that they did. They were also asked what would be the reasonable market value of such building if the contract of building had been substantially complied with, and they answered $8,155.50. They were also asked how much Atkinson had paid to Jackson Bros. on such contract, and the jury answered $6,760.66. The trial judge rendered judgment for $1,394.84, being the difference in the contract value of the building with extras as found by the jury, and the amount they found to have been paid by Atkinson on the contract price, which we find to be the correct amount due by Atkinson to Jackson Bros. under the contract. The court submitted many other issues in an effort to cover all the questions raised, but by its judgment excluded the answers thereto, because the same did not present the proper measure of damages which appellant Atkinson would have been entitled to had he proven his case as pleaded. It is upon the findings of the jury to these issues that appellant bases the claim here made. Appellant Atkinson's measure of damages would not have been the difference in the value of the house as constructed and its value had it been constructed in accordance with the plans and specifications, etc., but would be such an amount as would reasonably cover the cost for remedying any defects so as to fulfill the terms of the contract, unless it be shown that such defects could not be remedied, and in such event the measure of damages, of course, would be as contended by Atkinson. No such facts were pleaded or proved to exist in this case; but to the contrary the jury found that Jackson Bros. had substantially performed the contract. A substantial compliance without any intentional violation of a contract should, in all cases, be considered as a full performance of the contract, and, the jury having found that Jackson Bros. had substantially complied with their contract to construct the building for J. B. Atkinson, they were entitled to cover the contract price plus the agreed price of extras, which the jury found to constitute the total sum of $8,155.50, less the amount the jury found Atkinson had paid on said contract, which left the sum of $1,394.84. 9 C. J. 810, 811; Linch v. Paris Lumber & Grain Elevator Co., 80 Tex. 23, 15 S. W. 208; Graves v. Allert et al., 104 Tex. 614, 142 S. W. 869, 39 L. R. A. (N. S.) 591; Amr. Surety Co. v. Lyons, 44 Tex. Civ. App. 150, 97 S. W. 1080.

[7, 8] The appellant Atkinson complains that the court erred in including interest on this amount from the date of the acceptance of the building by Atkinson to the date of the judgment, because such was not supported by the verdict of the jury. This complaint is well made. Interest not recoverable eo

nomine but as damages is a question for the jury, and, in the absence of a finding of the jury awarding such interest as a part of the damages in such suit, a judgment including such should be reformed so as to exclude the interest item. Ablowich v. Bank, 95 Tex. 429, 67 S. W. 79, 881; S. A. & A. P. Ry. Co. v. Addison, 96 Tex. 61, 70 S. W. 200; Engine Co. v. Adams Peters (Tex. Com. App.) 227 S. W. 945; Morriss v. Hesse (Tex. Com. App.) 231 S. W. 317.

[9] Plaintiff contends that the court erred in refusing to reform, upon its motion, the judgment rendered so as to permit plaintiff to recover against J. B. Atkinson judgment for such sum as would pay its debt out of the amount found by the jury to be due Jackson Bros. on the contract. Plaintiff contends that it is entitled to such under its pleadings in count 1, and under the uncontradicted proof in support of such pleadings. The case was submitted to the jury on special issues. No request was made by plaintiff to submit the issue as to whether J. B. Atkinson agreed to pay direct to plaintiff such amounts as became due Jackson Bros. on the contract as it progressed. Plaintiff and Jackson Bros. testified that Atkinson did so agree, while Atkinson testified to the contrary. Under the provision of article 1985, Vernon's Sayles' Statutes 1914, we must presume that the trial court found on such issue in favor of J. B. Atkinson, and in support of the judgment rendered. The proposition is overruled. Article 1985, Vernon's Sayles' Statutes and cases thereunder cited. In this connection it was not pleaded, as contended by plaintiff, that Jackson Bros. had assigned their claim against J. B. Atkinson and wife to plaintiff, but plaintiff sought to enforce a contract alleged to exist between itself and J. B. Atkinson, whereby he agreed to pay direct to plaintiff any sum of money that might become due Jackson Bros. on the contract.

[10] Both plaintiff and Jackson Bros. contend that the trial court erred in not rendering personal judgment against Mary E. Atkinson for the amount of the balance due Jackson Bros. on the building contract, because it is alleged that the undisputed proof showed that all the lumber and material was furnished Jackson Bros., original contractors, by plaintiff, to be used for improving the separate property and estate of the said Mary E. Atkinson, under a contract made by her husband, J B. Atkinson, as her agent, with Jackson Bros., with her knowledge, authority, consent, and approval, and that the said improvements were made under her supervision, and that she accepted them for the benefit of her separate estate, which was greatly enhanced in value by reason thereof, and that she should be made to pay therefor. Upon this issue no request was made for the trial judge to submit the question of agency to the jury, and it will be presumed that he found thereon in support of his judgment that neither plaintiff nor Jackson Bros. should recover against her. The jury found upon this issue that the contract was made with Jackson Bros. to erect the residence with her knowledge and consent; that the building and improvements were made, for the benefit of her separate estate; that the lot on which the building was constructed was her separate property; that she accepted the improvements for the benefit of her separate property; and that the improvements inured to the benefit of and enhanced the value of her separate estate. Plaintiff and Jackson Bros. cite numerous authorities where it has been held that a married woman is liable and her separate estate stands charged with the payment of any debt which she may actually or impliedly contract for the benefit of her separate estate. Article 4621, as amended by Acts Thirty-Seventh Legislature (Vernon's Ann. Civ. St. Supp. 1922, art. 4621), authorizes a married woman to bind herself for improvements upon her separate estate, whether joined by her husband or not. It is not contended in the instant case that she signed the building contract, nor was she even requested to sign it. No facts are pleaded or proven whereby she would be estopped to deny liability for the lumber and materials which were used in the house built on her separate property. There is no rule of law which would bind a married woman and her separate estate merely because a contract made individually by her husband inured to the benefit of her separate estate. In other words, to hold, as contended by plaintiff and Jackson Bros., that under the facts of this case Mary E. Atkinson was personally liable for the improvements done by Jackson Bros. under a contract with her husband, would be nothing more than holding that a husband cannot improve the separate property of his wife, even upon a written contract which bound him alone for the payment of such improvements, without the wife also becoming liable personally for the payment of such improvements, even though she did not contract for them. The mere facts that a married woman knew a contract was made by her husband to improve her separate property, which she insisted on being carried out as made, and that it inured to the benefit of her property and enhanced the value thereof, is not sufficient to bind her and her separate property to pay for such improvements, in absence of proof that she authorized the contract, intending to bind herself, or that by her acts and conduct in inducing the same she would be estopped to deny her liability. Complainants cite the following authorities, but in each case the married woman had either actually or by implication authorized the indebtedness, or by her conduct was estopped to deny that she had done so: Teel v. Blair, 60 Tex. Civ. App. 254, 128 S. W. 479; Whitney Hardware Co. v. McMahan,

111 Tex. 242, 231 S. W. 694; Williams v. Doan (Tex. Civ. App.) 209 S. W. 761; Groesbeck v. Campbell, 38 Tex. 37; Adamson v. Shiel (Tex. App.) 18 S. W. 464.

[11] Both plaintiff and Jackson Bros. insist that the judgment rendered should be reformed so as to fix a lien upon the premises and the residence constructed under the contract between Jackson Bros. and J. B. Atkinson; plaintiff alleging that it had complied with the articles of the statute fixing a materialman's lien, while Jackson Bros. contend that as original contractors such a lien is established in their behalf under article 16, § 37, of the Constitution, which constitutional provision they contend is self-executing, without reference to a compliance with the provisions of articles 5623, 5633, and 5637 of the statutes relating to the manner of fixing materialman's, etc., liens. The proof shows that neither plaintiff nor Jackson Bros. made any attempt to comply with articles 5623, 5633, and 5637, relative to fixing a mechanic's, materialman's, and laborer's, etc., lien upon the premises or residence constructed thereon under the contract. Appellant Atkinson insists that article 16, § 37, of the Constitution is not self-executing, and, upon the failure of plaintiff and Jackson Bros. to fix their liens as provided by said articles 5623, 5633, and 5637, no such lien existed. He also insists that the premises and residence constituted the homestead of himself and wife, Mary E. Atkinson, at the time of the contract, and that the law providing the manner and method of fixing a lien upon a homestead had not been complied with. The right of both plaintiff and Jackson Bros. to establish their alleged liens, therefore, depends upon two questions: First, Is article 16, § 37, of the Constitution relating to mechanic's, etc., liens self-executing? Second. Was the premises and residence in question the homestead of J. B. and Mary E. Atkinson at the time of the execution of the contract for the erection of the residence?

As applied to plaintiff, who furnished the original contractor the material out of which the residence was wrought, article 16, § 37, of the Constitution relating to materialman's liens is not self-executing. In order for it to have established a materialman's lien by reason of having furnished the contractor material, it was required to comply with the provisions of articles 5623, 5633, and 5637, relating to such liens, and, having failed to do so, aside from the homestead question, plaintiff was not entitled to its lien. First Nat. Bank v. Lyon-Gray Lumber Co., 110 Tex. 173, 217 S. W. 133; Nichols v. Dixon, 99 Tex. 263, 89 S. W. 765; Bullard v. Norton, 107 Tex. 576, 182 S. W. 668; and Tex. Glass Co. v. Crowdus, 108 Tex. 346, 193 S. W. 1072.

[12] As applied to Jackson Bros., who were the original contractors, article 16, § 37, of the Constitution relating to mechanic's, materialman's, and laborer's liens is self-executing. First Nat. Bank v. Lyon-Gray Lbr. Co., 110 Tex. 170, 217 S. W. 133; Strang v. Pray, 89 Tex. 525, 35 S. W. 1054; Warner Elevator Mfg. Co. v. Maverick, 88 Tex. 489, 30 S. W. 437, 31 S. W. 353, 499; Berry v. McAdams, 93 Tex. 434, 55 S. W. 1112.

The reason for the distinction in applying the rule as above announced by the courts is obvious. It is necessary for a subcontractor or materialman who furnishes labor or material to the original contractor to comply with said statutes so as to give notice to the owner of the existence of such claim, while the contract furnishes such notice as to the original contractor. The service of such notice will impound in the hands of the owner any funds then owing, or which may thereafter become due the contractor, for which said materialman or subcontractor may have a personal judgment, and without such written notice as required by these statutes the owner could not know of the existence of such demand. A compliance with these statutes, whereby it is prescribed that the account be filed with the county clerk, is necessary to fix a lien upon the owner's property in behalf of the subcontractor or materialman who furnishes either labor or material to the original contractor, while the contract with the aid of the constitutional provision fixes such lien for the original contractor. And, although it is not the primary purpose of these statutes to fix the status of a subcontractor or materialman complying with them, as other lienholders or purchasers, yet, such a compliance does effectually do so, and is an added reason why they should be invoked.

Jackson Bros. would be entitled to their lien were it not for the fact that the premises and building erected under the contract constituted the homestead of Atkinson and wife at the time of the execution of the contract. The testimony relative to this issue was as follows:

J. B. Atkinson testified:

"They began work on that house about the 11th day of July, 1921. At that time we had rooms at K. I. Davis' residence; we were doing light housekeeping in the town of Coleman —here in this same town where we were building our house. We had been rooming at K. I. Davis' at that time, since about the 11th of April, of the same year. Prior to that time we had lived three miles northwest of Coleman, on a little farm. We moved from that farm to Coleman and rented rooms with Mr. K. I. Davis. K. I. Davis and his wife were living in the house; they owned it. We rented two rooms and did light housekeeping in them, but not from that time until the 19th of October; we moved from K. I. Davis' place to Mr. Gordon's place. Mr. Smitherman was at that time occupying the house. We had rooms there for about a month, I think—I am not positive, it was about 30 days before we moved into the house. something like that. We rented from J. F. Gordon—we had only one room there; we boarded there.

"After we moved off of the farm I spoke of to Coleman on April 1, 1921, we did not intend to move back to that farm—we intended never to move back to it. At that time it was our intention to build a residence in Coleman. When we left the farm in 1921 it was rented to Hubert Lowe, and we stayed there several months with Mr. Lowe and his family before we moved into' town here. Hubert Lowe moved onto the farm about the 1st of February, 1921, He had the farm in charge and controlled the house on the farm. There is about 70 acres in 'the farm I should judge. We just merely lived in the house with the Lowe's and occupied a part of it; the short time we were there I furnished the food and Mrs. Lowe did the cooking, and we had a little arrangement something to that effect. At the time we rented to Hubert Lowe and at the time we moved to Coleman we never intended to make that place our home longer.

"At the time we moved to Coleman and prior to the time we built this house we did not own any house in Coleman, or any interest in any. We were merely renting those rooms and boarding with Mr. Gordon temporarily while we could build a house. When I had the first discussion with Jackson Bros. in reference to building that house, and during all the time we were contemplating building it and from that time on the house and lot upon which it stood we intended to use as a home, a place of residence.

"I was married on June, 1905, to Mrs. Mary. E. Atkinson, and we have lived together as husband and wife from that time until now. In addition to the house in controversy, I had built on that lot a garage, a small barn, and fences; we also put some concrete sidewalks there that was not included in the contract for the building. Nobody has ever occupied that house here in Coleman except me and Mrs. Atkinson. * * *

"My wife owned a farm about three miles northwest of town before we moved to town, and we resided there and made it our home— it was 1,000 acres approximately. Part of it was in cultivation. It had a residence and other farm improvements on it. We had resided there for several years. At the time we moved to town we owned this lot. We had already bought that lot with the intention of building a residence on it. I don't remember exactly the date we bought that lot—it was a few months before that, I think it was in the fall of 1920, if I remember correctly. It was a vacant lot. I judge it was about August, 1920."

Testimony of Mary E. Atkinson as follows:

"My name is Mary E. Atkinson. I am the wife of Mr. J. B. Atkinson, defendant. Mr. Atkinson and myself moved to the town of Coleman and started light housekeeping the 11th of April last, 1921. We moved to Mr. K. I. Davis' and rented two rooms; Mr. Davis was keeping the rest of the house. We came from the farm—from the country. We did not ever intend to move back to that farm; No, sir. We intended to leave the farm forever as a home. We rented those two rooms from K. I. Davis up to about 30 days before we moved into the house; then we moved into Mr. Gordon's house and boarded there. We just

had one room in Mr. Gordon's house. We moved into the house involved in this suit the 19th of October last year. When Mr. Atkinson and myself began negotiations for the house in controversy, and when we contracted to have it built, it was our intention to use the house for a home, for myself and my husband, Mr. Atkinson. As soon as it was so we could move into the house in controversy we did move in it, and we have occupied is as a home ever since. We have no other home except that; No, sir."

[13] The jury in response to a special issue found that J. B. Atkinson and wife, Mary E. Atkinson, had abandoned their rural' homestead with the intention of never again using or claiming the same as a homestead at the time they entered into the contract with Jackson Bros. for the construction of a residence on the lot in the town of Coleman. No other issue was requested or given relative to the homestead question. The court, by denying Jackson Bros. a lien, impliedly held, based upon the evidence and the verdict of the jury, that th'e premises and building constituted the homestead of Atkinson and wife at the date of the contract. We find that the evidence is sufficient to support the judgment.

[14] It has been frequently held that where a lot is not actually occupied as a homestead, but is held by the parties claiming the homstead right for that purpose, which purpose is evidenced by acts of preparation looking to its actual occupancy for a homestead, that such intention, when so evidenced, impresses the property with a homestead character. Franklin v. Coffee, 18 Tex. 413, 70 Am. Dec. 292; Swope v. Stantzenberger, 59 Tex. 387; Moores v. Wills, 69 Tex. 109, 5 S. W. 675; Parr v. Newby, 73 Tex. 468, 11 S. W. 490; Gallagher v. Keller, 87 Tex. 472, 29 S. W. 647; West End Town Co. v. Grigg, 93 Tex. 451, 56 S. W. 49; Miles v. Kelley, 16 Tex. Civ. App. 147, 40 S. W. 599; Elliott Lumber Co. v. Mitchell (Tex. Civ. App.) 241 S. W. 221.

We are of the opinion that the judgment of the trial court should be reformed so as to exclude the interest item as shown by this opinion, and as to all other matters it should be, and is hereby, affirmed.

Reformed and affirmed.

On Motion for Rehearing.

All parties perfected an appeal in this case, and each has filed motion for rehearing.

We overrule the motion of appellant J. B. Atkinson for a rehearing.

We grant in part, and overrule in part, the motion of Leeper-Curd Lumber Company, hereinafter referred to as lumber company. It is granted to the extent of allowing said lumber company to recover a personal judgment against J. B. Atkinson for the full amount of its account sued upon for material furnished with which to construct

the residence under the contract in question. Our holding that the lumber company failed to plead an equitable assignment of such fund or debt as became due Jackson Bros. from Atkinson on the contract as the work on the building progressed was error. Our holding may be excused, if such excuse is necessary, by reason of the fact that the lumber company did not brief this proposition, and for the further reason that, in arguing the case on submission, we may have erroneously inferred that no such judgment was sought, since it was admitted that Atkinson was insolvent. However, the lumber company now rightfully contends that it have such judgment. The pleading on this issue is as follows:

"That thereafter the said defendant Jackson Bros. made a contract with the plaintiffs, through their said local manager, for lumber and building materials to be furnished for the construction of said residence, and agreed with the plaintiffs that as work progressed the owner, to wit, J. B. Atkinson, should make payments out of the amounts accruing and due to said defendants contractors, direct to these plaintiffs in payment for such lumber and building materials to be furnished by these plaintiffs. And thereafter their said local manager conferred with the said defendant Atkinson with reference to said agreement on the part of Jackson Bros., and the said Atkinson consented and agreed thereto."

The jury found on this issue as follows:

"That Jackson Bros. verbally agreed with H. S. Willey, local manager of the Leeper-Curd Lumber Company, that J. B. Atkinson would pay direct to Leeper-Curd Lumber Company, for all lumber and building material furnished and to be furnished to Jackson Bros., by Leeper-Curd Lumber Company for the construction of the Atkinson residence."

[15] Such pleading and finding of fact by the jury conclusively establishes an equitable assignment to the lumber company of so much of the fund or debt as became due Jackson Bros. on the building contract as is necessary to pay the account in full, since it was ascertained by this trial that Atkinson owed Jackson Bros. as a balance on the contract and for extras, more than enough to pay the entire demand of the lumber company. The rule is well established that an equitable assignment of a specific fund in the hands of a third person creates an equitable property in such fund. The fund assigned need not be actually in being, if it exists potentially. The following authorities conclusively support the lumber company's claim for judgment: Pomeroy's Equity Jurisprudence (3d Ed.) vol. 3, § 1280, pp. 2559 to 2563; section 1283, pp. 2566 and 2567; Beaumont Lumber Co. v. Moore (Tex. Civ. App.) 41 S. W. 180; Milmo Nat. Bank v. Convery et al., 8 Tex. Civ. App. 181, 27 S. W. 828.

It is further decreed, in view of this holding, that Leeper-Curd Lumber Company do have judgment against J. B. Atkinson for the sum of $1,110.20 (the amount of the judgment obtained by said lumber company against Jackson Bros.), with interest thereon at the legal rate from and after November 10, 1922 (the date of the judgment of the trial court); and it is further decreed that, if J. B. Atkinson shall pay or is forced to pay this judgment, or any part of it, that the amount of such payment shall be credited upon the judgment rendered herein in favor of Leeper-Curd Company against Jackson Bros.; and it is further decreed that the judgment herein rendered in favor of Jackson Bros. against J. B. Atkinson for the sum of $1,466.90, be and the same is hereby reformed so as to allow a recovery of the sum of $336.95, with interest from and after November 10, 1922, at the legal rate, being the balance due on the building contract and for extras, less the interest on the $573 for extras, from October 19, 1921, to November 10, 1922, and less the sum of $1,110.20, the amount of the judgment obtained by Leeper-Curd Lumber Company against Jackson Bros. and J. B. Atkinson.

[16] Jackson Bros.' motion for a rehearing is granted in part and in part overruled. This court's judgment in excluding at least a part of the interest allowed by the trial court upon the judgment rendered in favor of Jackson Bros. against J. B. Atkinson was erroneous. We held that all of the interest allowed by the court upon this judgment was not recoverable eo nomine, but as damages, and as such should be excluded because not supported by the verdict of the jury which found the amount Jackson Bros. were entitled to recover. As to a part of the interest allowed, this holding is incorrect.

Jackson Bros.' judgment consisted of two items, being the sum of $821.86 as a balance due upon the written building contract, and the sum of $573 allowed by the jury as the reasonable and fair price of labor and material as extras agreed upon to complete the building contract. As to the item of $821.86, being the balance found to be due on the written contract, "ascertaining the sum payable," interest is recoverable eo nomine under the provisions of article 4977, Revised Statutes 1911. This being true, the court was authorized to allow interest upon the amount of the balance due on the contract without submitting the question of the amount of interest to the jury. A mere mathematical calculation would ascertain the amount of interest due. Our judgment excluding the interest upon the judgment in favor of Jackson Bros. against J. B. Atkinson is set aside, and the judgment of the trial court allowing interest is affirmed to the extent of allowing a recovery of interest at the legal rate upon the sum of $821.86, from October 19, 1921 (the date of the acceptance of the building by Atkinson), until the date of

judgment; otherwise our judgment excluding a recovery of interest on said judgment is affirmed. City of San Antonio v. Marshall (Tex. Civ. App.) 85 S. W. 315; Ripley v. Wenzel (Tex. Civ. App.) 139 S. W. 897.

[17, 18] Interest on the item of $573, being the amount found by the jury to be due Jackson Bros. for extra labor and material agreed upon, and not being a sum ascertainable from the contract, but dependent upon extraneous proof and a finding of the jury as to the amount and the reasonableness and fairness of the prices charged, is not recoverable eo nomine but as damages for wrongfully withholding payment of such sum. The contract authorized the extras, but it did not fix the price to be paid therefor. To the contrary it provided that the contractor would be paid for such extras a reasonable and fair price, without regard to the price fixed by the contract for work or material of a similar nature, said price to be determined by the parties. Where the question is the amount of the recovery of a sum ·payable, which has been wrongfully withheld, except in the instances provided by statute, as on open account, or on a written contract "ascertaining the sum payable," interest cannot be allowed thereon from the date of the accrual of the cause of action to the date of judgment, in absence of a finding of the jury awarding interest as a part of the damages in such case. The rule is applicable to special issue verdicts. The verdict on special issues as to the amount recoverable constitutes the sole basis of the judgment, and the trial court is not authorized to add thereto damages not included in such verdict. This court had occasion to pass upon this question recently in the case of James C. Davis, Agent, v. J. P. Morris, 257 S. W. 328, in which case we followed the rule announced by the Supreme Court in the cases cited in support of our opinion discussing this question. The following cases, cited by Jackson Bros., by which they seek to invoke the aid of the provisions of article 1985, Revised Statutes, as to presumptive findings of fact by trial judges in special issue cases, are not applicable to the point raised in this case. The question of the amount of the damages was not submitted to the jury in these cases, but merely the facts from which the trial court could ascertain and estimate the damages, and interest being an element of the damages, if prayed for, was rightfully assessed. Ry. Co. v. Erwin (Tex. Civ. App.) 180 S. W. 662; City of San Antonio v. Pfeiffer (Tex. Civ. App.) 216 S. W. 207.

[19] Jackson Bros. also earnestly insist that we were in error in holding that the evidence was sufficient to support the trial court's conclusion of law that the lot or premises on which the residence was constructed constituted the homestead of J. B. Atkinson and wife at the time the contract was executed. It is agreed that we properly state the law applicable to designations of a homestead; but it is insisted that the only acts of preparation on the part of J. B. Atkinson and his wife evidencing their intention to occupy the premises and the residence constructed thereon as a homestead came after the date of the contract in question. To this contention we do not agree. The record discloses testimony of sufficient acts of preparation on the part of Atkinson and wife, which coupled with their intention to occupy the premises as a home so soon as a suitable residence could be erected, as would impress it with the homestead character, before the execution of the contract with Jackson Bros. The testimony shows that some time prior to the date of the execution of the contract Atkinson and wife selected from a book of some character the kind of house they desired to build on the premises in question as their home. A little later they employed Moore Construction Company, a firm of architects at Brownwood, Tex., to come to Coleman, Tex., and make a survey of the lot preparatory to making such fill or grades as would be necessary in order to fit the building selected on the lot, and preparatory to making plans and specifications for the construction of the house selected on said lot. Still later, Atkinson went to Brownwood for the purpose of paying the architects their $60 fee for drawing the plans and specifications, and inspect a similar residence to the one they were preparing to construct. At a still later date, Atkinson asked for competitive bids for the construction of this residence in accordance with the plans and specifications made by Moore Construction Company, at which time Jackson Bros., so far as the record shows, first came on the scene as bidders for the contract. It seems that all bids were rejected, but that at a later date Jackson Bros. were awarded the contract to construct the building in accordance with the plans and specifications, with certain addenda thereto. Such acts of preparation before the execution of the contract are sufficient to impress the lot or premises in question with the homestead character. There is no hard and fast rule laid down by the authorities as to what specific acts of preparation, coupled with an intention to occupy the premises, are necessary to impress them with the homestead character; but it has been held by the Supreme Court, in the cases cited in our opinion, that the planting of shade trees, or the digging of a well on vacant lots or premises are sufficient acts of preparation to occupy in the future as will impress such premises with the homestead character. That being true, we can see no material distinction in such acts of preparation to occupy and in the acts of preparation just detailed in this case. The survey of the lot to ascertain the necessary fills or grades to be made in order to erect the build-

ing selected thereon, the preparation of the plans and specifications in accordance with the survey, the seeking of competitive bids on said plans and specifications were all acts of material value in the preparation of the lot to receive the building desired to be erected for the future use as a home by Atkinson and his wife. We especially think the acts detailed sufficient to constitute the necessary preparations looking forward to the future occupancy of the premises as a home, in view of the holding of the court in the case of Sanguinett & Staats v. Colorado Salt Co. (Tex. Civ. App.) 150 S. W. 490 (writ of error denied by the Supreme Court), to the effect that the architect was entitled to a constitutional mechanic's lien upon the building constructed for his services.

The motions are overruled, except as above stated.

Overruled in part, and in part. granted.